The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning. For our purposes of our argument this morning, we've consolidated three cases for purposes of argument. Those cases are 19-2131, OMG v. United States, 19-2226, Midwest Fastener v. United States, and 19-403, Simpson Strong, Thai Company v. United States. Ms. Bay, we're ready to proceed whenever you are. Thank you, Your Honor. May it please the Court. The trial court's judgment should be reversed. The trial court erred in multiple respects, first and foremost by relying on dictionary definitions rather than the full language of the scope, including the consideration of what a nail of two or more pieces is, to hold that the products at issue in these cases are unambiguously outside of the scope of the orders, even though the scope language clearly describes and encompasses nails in a different, broader manner than their dictionary or common definition would dictate. Here, especially where no language unambiguously excluded the product at issue, the trial court erred and, again, should be reversed. Ms. Bay, I just want to ask you kind of a preliminary technical question, which is, with respect to each of these three cases, is there any meaningful difference between how we should look at the zinc and the nylon anchors, at Vietnam orders versus the China order, or do these all really rise and fall together? Your Honor, that's unfortunately a bit of a complicated question. I think, for the most part, these cases rise and fall together because of the primary issues that are common across all three cases of the Court's errant reliance on dictionary definitions and because the language of the orders is so similar between the orders. In addition, we think that the trial court erred in its consideration of trade usage in all three cases, as well as ignoring the K1 factors due to its finding that the scope orders unambiguously exclude the products at issue. I do think that there are slight differences between the cases that might merit bringing up, and so I can just highlight those for Your Honors right now. The first one is that, as Your Honor pointed out, in the OMG case, we're dealing only with zinc anchors. In the Simpson and Midwest Fastener case, we're dealing with nylon and zinc anchors. As I said, I think that Commerce's determination that all of these anchors fell within the scope of the orders was reasonable and should be sustained, and that the trial court erred in all of these cases. But to the extent that there is some sort of distinction in Your Honor's mind, there is a slight difference between the nature of the products as far as a couple of them being nylon anchors versus zinc anchors. But again, I don't think that that should really change the outcome of the case. I think the other sort of primary difference in my mind is with regard to this HTS or customs or tariff classification subheading. I know that OMG especially has made the HTS subheading somewhat of a centerpiece of its argument, and though we mentioned in our brief, I think it merits highlighting more that the HTS subheading that covers OMG's anchors and that would cover Simpson and Midwest Fastener's zinc anchors, which is HTS subheading 7907, was actually or rather is actually specifically part of the language of the anti-dumping duty and countervailing duty orders covering nails in Vietnam and was always part of the final language of those orders. I think there is a slight difference there between the Vietnam orders then with the China order, which currently does also specifically include HTS subheading 7907, but my understanding is that it did not specifically include that subheading in its original iteration. But I do think it's very key and again highlights how the trial court erred that it completely ignores that HTS subheading 7907 was specifically included in the language of the orders covering nails from Vietnam and therefore is in clear intent by commerce to incorporate products such as OMG Midwest Fasteners and Simpson's zinc anchors. So I think that that's an important point that I know we raised in our brief, but we did not perhaps highlight as much as merits. Yes, I'm sorry, unless you are you done with answering that question? I just wanted to ask you a question about the framework. Of course, Your Honor. Yes. Okay, so I understand the framework where first you look at the scope ruling and determine whether the governing language is in fact ambiguous. And then once you determine that, you determine whether the product meets the unambiguous scope terms, which is the question of fact. My question is when you're looking at that first step of determining whether the governing language is in fact ambiguous, do you kind of do that within the context of the imported product at issue in the case? Like, for example, here, when we look at the language, nails constructed of two or more pieces, are we supposed to determine what that means? Like, do I need to know what that means for all examples, what all nails of two pieces are? Or is it really just I need to know enough that I can perform the second step of whether the product meets the unambiguous claim scope, given that what we're talking about here is anchored? Your Honor, if I'm understanding your question correctly, and please correct me if I'm not, I think Your Honor's second answer would be the one that we're positing is the correct framework, which is that the cornerstone of any anti-dumping duty or countervailing duty order is, as this Court has held on many occasions, the language of the orders themselves. And so to the extent that this Court or the trial court or commerce can determine simply based on the language of the orders themselves whether these products are facially covered, then that is all that it needs to do. If this Court or commerce were to determine that the term nail constructed of two or more pieces had some level of ambiguity, then, of course, it might need to consider the K-1 factors or, you know, potentially industry jargon. And I think that sort of brings us into the framework that ArcelorMittal discussed. I can't speak for counsel. I think I'm afraid maybe I want to make sure you understand my question because I understand. I'm wondering whether when you look at whether the language is ambiguous, whether I have to know the full scope of what that language means. Like, do I need to know, for example, whether a steel pen with a washer falls within the scope of that language? Or really, am I just looking at what does that language mean in the context of the imported product issue here, which is anchors? Your Honor, our answer would be the second, that you're really just looking at what the term or what the scope language means in its own issue, you're saying. You said in its own context, but by that, just to be clear, you mean in the context of the case at issue and the product at issue in the case, right? Yes, Your Honor, in the context of the scope language and the product at issue and whether the product at issue fits within the plain language of the orders. And here, again, Commerce determined that there was this phrase in the scope language, nails constructed of two or more pieces. And there is this HTS subheading that includes zinc anchors. And Commerce determined that the phrase, nails constructed of two or more pieces, reasonably encompass zinc anchors, which have as a key component, a steel nail. And I think it's important to highlight here that none of the parties nor the trial court disputes that this component is a steel nail. The only dispute is... Counsel, what are we... Counsel, what do we encompass the anchors as part of its scope? What is our standard of review of that question? The standard of review of that question is one of substantial deference. I think this court has held on many occasions that courts afford Commerce substantial deference in interpreting the scope of their own orders because... I'm not... Counsel, I'm not familiar with any substantial deference language. Please try to speak in terms of standards of review that we've actually ever articulated, like arbitrary and capricious, substantial evidence, clear error. Please try to identify for me an actual standard of review. Your Honor, I believe that this court did actually in the Shenyang-Rwanda case state that it granted significant deference. I may have used the wrong term, substantial, instead of significant. Okay, but again, significant deference doesn't mean anything to me. That's like saying you're a little bit tall. I don't know what significant deference means. Can you frame it in terms of a standard of review that we commonly use? Do we review Commerce... Is this a fact question or a law question, for example? So, Your Honor, I think with regard to whether the question is one of fact or one of law, the answer, as I believe this court has held, is that in determining whether a term in the order is ambiguous or unambiguous, that is a question of law that's reviewed de novo. But as this court held in Meridian, the question of whether a product meets the terms of the scope is a question of fact that is something that Commerce would be interpreting in the first instance, which then, of course, the court would... So, if it's a question of fact whether or not anchors with the nail anchor combination is, in fact, a two-piece nail, then we would review that for substantial evidence coming from the agency. Is that right? Yes, Your Honor. The standard would then be if it's, I believe, not unlawful and is supported by substantial evidence. And I believe that... Sorry, Your Honor. So, this court has held that when it comes to whether something is supported by substantial evidence, then as long as Commerce's determination is reasonable, this court would not disturb it even if it might have found differently in the first instance. And I think that that, again, is where the trial court errs here. Rather than determining whether Commerce's determination was reasonable and supported by substantial evidence, the court rather substituted its judgment for Commerce's instead of affording Commerce any deference, even though Commerce... Counsel, can I just follow up on your discussion with Judge Moore, which is an important one? I think in your answer, you did note that in our case Meridian Products, we said, I recall, and I may be wrong about this, that whether the terms are unambiguous or whether an ambiguity exists is a question of law for de novo review. Am I right about that? Yes, Your Honor. Yes, Your Honor. Counsel, this is Judge Stoll. Could I ask you another question? I wanted to ask you about, do you agree with Commerce's conclusion that the OMG's anchors should be considered as a unitary article of Commerce? Yes, Your Honor. I believe that all parties do agree that the anchors should be considered a unitary article of Commerce because they are meant to be used together, both the body component and the steel component, and they function together as a singular product. And therefore, they should be considered unitarily. But I don't think that that detracts from the trial court's error in relying on dictionary definitions of a term nail rather than considering what... If it's a unitary product of Commerce, doesn't the whole product and not just the steel pen have to be a nail? Your Honor, I take your point and the trial court's point, but I think the problem with the trial court's point in saying that the entire product needs to be a nail is that it doesn't take into account how there could be a nail of two or more pieces, which, again, is specifically part of Commerce's scope language. And in determining what is a nail of two or more pieces, the trial court never considers or explains how there could be a nail of two or more pieces where each part constitutes a component of a nail. Commerce, on the other hand, did recognize that there would be nails of two or more pieces where one part could be a steel pen component and one part could be an anchor component. Isn't there another example of a two-part nail that could be a shaft with a decorative nail head being two parts? Your Honor, we're not disputing that that could be an example of a two-piece nail, but I think there's a couple important things to point out in that regard. One is that OMG, although it states that a two-piece nail would be something like a nail with a decorative head, the pages of the record that it cites to don't actually use the term nail of two or more pieces or two-piece nail or anywhere expressed explicitly on the pages of the record that OMG cites that those are two-piece nails. So, OMG and the trial court are substituting definitions that are not grounded in the scope language in determining what is a nail of two or more pieces. On the other hand, the IPC report, which contains, I believe, the only description on the two-piece nails of two or more pieces are specifically identify both nails with decorative heads, as well as nails with washers, as well as anchors that are comprised of an anchor body and or, sorry, a zinc body and a steel nail component such as what we have here. I have a question about counsel. Is that a K-1 factor? Yeah, right. So, why do I even look at that? Can I look at that now? I mean, let's say that I agree with you and the parties in the trial court below that the language is unambiguous. Why would I be looking at a K-1 factor to try to determine that it's ambiguous? Well, Your Honor, if, of course, if you agree with our position and commerce is that the language is unambiguous, then you would not need to look at the K-1 factors in accordance but we're submitting that the trial court erred in holding that the language was unambiguous and unambiguously excluded the product to issue and we think that that was clear error. If this court were to determine that, you know, the term nail of two or more pieces, which, again, the court did not even consider is ambiguous, then it would turn to things like the ITC report and the former scope ruling that commerce considered in this case. My understanding is that I am now about a minute and a half into rebuttal, so I'll reserve the rest of the rebuttal. Let me just ask to make sure because I thought I maybe heard Judge Mueller wanting to ask a question before. Any further questions for you, Judge Mueller? Yes, thank you. So, I guess what do we reference to figure out if this is ambiguous or not? I'll be honest, I don't have experience with this concept of two-piece nails and I'm pretty handy, so I've never heard of a two-piece nail before. So, what would be the kind of thing we would reference to ascertain whether that phrase is ambiguous or not? Because it's just used in the order without sort of further explanation or example being given. Well, Your Honor, our position in commerces was that because the phrase is used in the order without any further restriction that any nail that would be comprised of two or more pieces would unambiguously fit within the terms of the order. But counsel, counsel, you're saying any nail that's comprised of two or more pieces, but a nail in a washer is not a nail. A nail in a cap is not a nail. A nail in an anchor is not a nail. I have never heard nor do I see in this record apart from the ITC thing any explanation for what a two-piece nail is. I understand that one could say a nail in a washer is a two-piece nail, but one could also say it's a nail in a washer. It's not the washer isn't part of the nail and therefore it's not a piece of the nail. Do you understand where I'm going? I'm just trying to use sort of plain English to understand this. And where do we reference? Because the two-piece nail concept is just confusing for me. So, in terms of determining whether it's ambiguous or not, and maybe it is unambiguous and I'm just certainly not a skilled artisan. But to me, where do we look to make this determination as a matter of law about whether it's ambiguous or not? Well, Your Honor, I think the answer to that is if this court determines that it is not clear from the language of the order itself. And again, I would point out here that the Vietnam Orders do specifically incorporate the 7907 subheading, which does include OMG's zinc anchors. So, I think that would be language of the order clearly pointing towards the inclusion of those anchors. But to the point that the court determines that it's just not clear from the language of the orders what a nail of two or more pieces is, then I think at that point the court would proceed to a K-1 analysis, in which case the ITC report would be, we think, definitive or dispositive of the question at hand. If this court has no further questions for the current time, I'd like to reserve my last couple minutes for rebuttal. Thank you very much. Let's hear from the other side. We have a split argument. So, Mr. Who is the first person to argue? I'm sorry. This is Mr. Marshak. Am I on the phone now? Am I unmuting myself? I can hear you, yes. Okay, good. Yeah, this is Ned Marshak, and I represent OMG. So, this is the Vietnam case. We're talking about... Sir, sir, I hope I'm speaking for the entire panel. I think your voice is a little too loud. So, could you drop it down a notch? Is this better? Yeah, a little bit. Yes, thank you. I'll put the phone a little bit further away. Ned Marshak, on behalf of OMG, we have the zinc anchors from Vietnam, and I guess I want to continue with the conversation that the court was having counsel for the United States. We believe that the order, the language, and the CIT was correct, that unambiguously, the language, nails of two or more pieces, unambiguously excludes our zinc anchors, because basically, what we have here, we have a zinc anchor. We don't have a nail and a component part of the nail. We don't have a nail and a minor component of the nail. For example, you may say a washer or a cap. What we have is a zinc anchor, and in the zinc anchor, the body of the anchor is weighs 62% of the product, the value is 74% of the product. It's being bought and sold. It's known in the trade, the trade uses a zinc anchor. And when you look at the evidence of record in this case- Counsel, all these things that you're describing, how much it weighs, how much it costs, wouldn't those be K1 factor analysis points? How are those relevant to us deciding whether the word two-piece nail is ambiguous or not? Okay. What we're saying is whether or not the word two-piece nail is ambiguous, and we don't think it is, and I could get to that in a second when we talk about what two-piece nails are, a zinc anchor is just not a two-piece nail. For something to be a two-piece nail, the second piece has to be part of the nail. And here, the second piece is a body, and the body is really the defining part of this product. Again, it's a zinc anchor. The trade usage, it's being sold. It's a zinc anchor. It's not a nail. So you're suggesting the proper definition of a two-piece nail, as I understand it, is that both pieces have to be part of the nail. Is that correct? The pieces have to be part of the nail, or the second piece has to somehow be a minor component. And there, when we talk about two-piece nails, if you look at the appendix at page 243, these are the examples of two-piece nails. And you see the ASTM specifications that were placed, that were in the petition, that's on the record, that we cited to. And it talks about two-piece nails as being hand-driven cap nails, or hand-driven with a metal round cap, or a metal square cap, or a plastic round cap, or a plastic square cap. Now, those are, in the trade and in common parlance, those are what are considered to be two-piece nails, where the second part of the nail is a cap to the nail. Counsel, this is Judge Stoll. I have a question for you. I find your answer here kind of interesting because when I read the CIT's decision, I saw the judge to be saying that a nail is something that has to be driven by impact. Yes. And really focusing on the impact insertion. Absolutely. And then finding that an anchor here is not a nail because it doesn't use impact insertion. And so I'm wondering, are you backing away from that? Absolutely not, Your Honor. That's like the fundamental distinction, and I probably should have talked about that first, between an anchor and a nail. And the judge hit on that, that when he looked at the definition of nail, it's like a slender object that you hit on the head with a totally different. There, you drill a hole, you insert the zinc body, and then when you hit the pin or the nail, that expands the zinc body. And I think when the judge, Judge Katzmann, was talking about the difference in the nail, why this is unambiguously not a nail, he was saying it doesn't function like a nail. A nail, regardless if it's one or two pieces, has the same function. Your two-piece plastic cap nail functions as a nail. You hit the head, and it's inserted, and that's what the insertion is. That's what secures the two pieces. With a zinc anchor, the two pieces are secured by a totally different method. You drill the hole first, and then you put the body in, and then you expand. Counsel? Yes. Counsel, how do you respond to the government's argument, and I hope I get it right as I understood her to explain it, that the Vietnam Order expressly references the HTS code which covers zinc anchors? Counsel, please don't interrupt me. But it expressly references the code covering zinc anchors. And, you know, why would it do that if it weren't meaning to include the zinc anchors in the two-piece nail category? Okay. One answer to that, Your Honor, is that... I just asked you to lower your voice a little. I'm sorry, Your Honor. One answer to that is that the HTS subheadings in the order are indispositive of their convenience. But I think a more important answer in this case, first you look at the appendix, page 339, and you're going to see when the International Trade Commission did its investigation, it did not include subheading 7907 in what they believe to be the HTS numbers subject to the investigation. And when they said for the tariff treatment, again, on appendix 339, it said, and this is quoting the ITC, based upon the scope set forth by Commerce, information available to the Commission indicates that the subject goods currently are classified in subheadings 731-70055, 737-0065, and 737-0075. That does not include the classification for zinc anchors, which was 7907. And in addition, Your Honor, when they wrote the scope, if you look at the scope ruling, and that's on page 494 of the appendix, and you look at 497, when you look at the HTS numbers on page 497, in the scope ruling for OMG, it does not include the 7907. So at the time they wrote the scope ruling, at the time the International Trade Commission did their investigation, they really weren't thinking about zinc anchors. Zinc anchors may have been put in the order as an afterthought for convenience. But at the time of the investigation, the time of the ITC investigation, they did not include zinc anchors as part of the investigation. And in fact, at the time of the scope ruling, they did not include the HTS for zinc anchors in your scope ruling. But, Counsel, that's the scope ruling or the investigation. We have to determine if the words two-piece anchors in the actual order is or is not ambiguous, and if the actual order itself, which expressly refers to a heading that only applies to zinc anchors. Is that correct? Correct, Your Honor. That is, again, it's for convenience only, and we submit... Counsel, I don't understand what you mean it's for convenience only. It was in the order as exemplifying what is covered by the scope of the order. Is that right? It's in the order because they have HTF subheadings are provided for convenience and customs purposes. And then it says the written description of the scope of the orders is dispositive. So the fact that they may have put 7907 for convenience does not... I don't understand whose convenience you mean. I don't even understand the use of that word in this context. The order gives these headings as what are presumptively, when they write the order, included within the order. Is that right? Am I understanding how these orders work and why the headings are listed? The headings are listed, and this is in every single heading for every single case. They're listed as exemplifying what is intended to be covered by the order. What would be the purpose of listing them? Again, it's what Commerce says for convenience. In this case, we believe if listed there... You keep saying convenience, but who's convenience? The convenience is for the agency to know if something comes in under a certain heading. Yes, this order is applicable to it. Is that the convenience you mean? If you look at 7907, Your Honor, it includes many, many, many products. I believe it's a basket provision for articles of zinc. So maybe there's something else there, but there's a possibility that an article of zinc could be considered to be subject to this order. Our article of zinc, which is a zinc anchor, is not there. The other reason they probably put it in because... I believe it was in because of the Cobra case, their decision there, and we believe that that was absolutely wrongly decided because when you look at the product, what we have is a zinc anchor, and this zinc anchor, the body cannot, we believe, in any stretch of the imagination be considered part of a nail. It's just not a nail. It's a totally different product, and the trade believes it's a different product. Just anybody's nomenclature, people who use these products know when they ask for a zinc anchor, they get a zinc anchor. When they ask for a nail or a two-piece nail, they get a nail. And again, we have the ASTM, and we have the Lowe's website where you see there's a category of two-piece nails, and there's a totally separate category of zinc anchors. And the record in this case, we have 10 definitions or 10 sources of what calling this product a zinc anchor. It's a zinc anchor. It's not a two-piece nail. And if Petitioner of Commerce wanted to come up with anything to say that it's a two-piece nail, they could have done it. And I think the absence of any evidence at all, there was absolutely nothing to show that anybody thinks of this zinc anchor as a two-piece nail. They had the person in the world who considers this zinc anchor to be a two-piece nail is Commerce. And when you ask them why, they just say, well, it's a body and it's a nail, so therefore it's a two-piece nail without recognizing the body is not part of the nail. And I know it's not dispositive. I'm sorry, Your Honor. Didn't the ITC report also conclude this was a two-piece nail? I believe that there's ambiguity there. Because if you will look at the appendix at 339, that it talks about, it has the tariff treatment and the tariff treatment says, we're not aware of any HTS subheading, so we're not aware of 7907. And right below it, it has the product. It talks about some nails are produced from two or more pieces. We agree with that. And then it talks about examples, nails with a decorative head. And then it talks about an example, a masonry anchor that comprises a zinc anchor and a steel wire nail. And I think there the ITC recognized that you could have something together, a anchor and a nail. We believe the ITC made a mistake because it's not the zinc anchor, it's the zinc body in a steel wire nail. So, you know, potentially there's some potential ambiguity in that one comment by the ITC, but I believe you don't even get there. You know, I believe this is... Well, but counsel, you said nobody except for Commerce has ever considered zinc anchor to constitute a two-piece nail, but doesn't the ITC report suggest that the ITC also thinks so? I'm not sure. Because of the paragraph above when we talk about tariff treatment and... So in order for me to conclude the ITC does not think the zinc anchor is a two-piece nail, I have to conclude they had a typo in their report? No. No, it's not a question of a typo. It's a question that when you're talking about this paragraph in the ITC report, then you're getting heavily into the K1 factors. Because this would be a K1 factor, and if you got heavily into the K1 factors, which the Department of Commerce didn't because they said it was unambiguously a nail, and the court didn't because the court said it was unambiguously not a nail. If you got into the K2 factors, as we talked about in our brief, we could say basically there are 10 K1 factors that support our position that this is not a nail. You look at the petition, you look at the rest of the ITC report, and there's this one reference which potentially supports the possibility that it's a nail. So we believe if you did get into a careful analysis of the K1 factors, we would win on that, but neither the department or the court really got into that very sophisticated K1 analysis. But we believe we would win on that based on what's in our brief. If the panel doesn't have anything further for you, I think Mr. Williams is up. I think I did the bell sound a few minutes ago. So the remainder of the time is for Mr. Williams. How much time is left? Your Honor, we had run over about five minutes for Mr. Marshak. Should I set it for five minutes for Mr. Williams? Yes, thank you. Obviously if the panel has questions, we'll extend that. Mr. Williams, you're up. Good morning, Your Honors. Please, the court. The central and perhaps the only question in these cases is whether anchors are nails. You have to reach the conclusion that these are nails before you can even get to the analysis of whether they are a two-piece nail. Well, let me ask you as a threshold matter, Mr. Williams, this is Judge Proust. I was a little confused by your briefing. I think you agreed that the CIT was correct, but you also said that the CIT concluded that the term two-piece nails was ambiguous. Is that your reading of the CIT's opinion? I understand why you might think that was confusing. When we were talking about the CIT's opinion and ambiguity, we were addressing the CIT's use of dictionary definitions to define what is a nail. To the extent that the CIT looked at dictionary definitions to define what's a nail, then perhaps they concluded that there was some ambiguity in that statement. Well, is there anything to point to in the CIT opinion that says, I thought I read the CIT as saying there was no ambiguity? Yes, I would agree with that. Yes, that there's no ambiguity. And then when we were talking about ambiguity, we were looking at referencing their use of dictionary definitions to define what is a nail. Counsel, are you saying that it's okay for the CIT to look at dictionary definitions to understand the plain meaning of the word nail, so long as it's not inconsistent with the order? Yes, we are. Because what is a nail? Anytime you're to say that something is within the scope, you have to know what it is. The scope here talks about certain steel nails having a one-piece construction or be constructed of two or more pieces. And so, what is a nail? You have to know that. And Commerce, in its determination, they never really addressed whether anchors are nails. They said that one component is a nail, and it's installed into conclusively determined, excuse me, made a conclusive determination that anchors are nails. And then from there, they started talking about whether there were two-piece nails. Did I just hear the, I'm sorry, the timer that my time is up? I think I did, but let me just ask the panel if there are any further questions for Mr. Williams. I'm sorry, Your Honor, that was not the tone. I think that was someone's computer. Oh, okay. We'll keep going. Okay. So, they skipped over the first part of the analysis. Are anchors nails? And that, in and of itself, is an unreasonable determination. And so, when the CIT looked at what is a nail, defined that term, and then compared that definition to a nail, to the anchors, they concluded that these aren't nails. And the, I just lost my thought. The, you know, the government argues that the, you know, the CIT decision, you know, by using the definitions, they read out the whole part of a two-piece nail from the scope of the, from the scope, but they didn't. They were just looking to see, they didn't look at the definition of a two-piece nail. They looked at the definition tried to, the court was determining what is a nail. Two-piece nails are still within the scope, but you first have to determine, are anchors nails? And if they aren't, then, you know, they're out of the scope of the case. Well, there is the buzzer. Does the panel have any further questions for Mr. Williams? No. No. Okay. Thank you very much. Let's hear from the government, which has some time for rebuttal. Ms. Bay? Ms. Bay, are you with us? Yes, I'm sorry, Your Honor. I think I was still on mute. I think just getting to the heart of the matter, the relevant question, despite what Mr. Williams states, is not whether these products, anchors, are nailed within the dictionary definition of the terms, but whether the anchors can be considered subject merchandise, subject to the orders, whether by looking at the plain language of the orders, or even if necessary, looking at the K1 factors. And here, the trial court clearly erred by relying on dictionary definitions as an interpretive tool, but not just relying on them, but relying on them to the exclusion of scope language. This court held that- Counsel, this is Judge Stoll. I just have a quick question for you on that, the dictionary definitions. Are you saying that a judge cannot look at a dictionary definition to understand a plain meaning of a term when that plain meaning that the judge arrives at is not inconsistent with the order? Would you find that objectionable? Your Honor, no. I think as we stated in our brief, we're not stating that a court may never look at dictionary definitions in interpreting an order, but rather that the court cannot rely on dictionary definitions that render other scope terms near surplusage or improperly narrow or obviate other parts of the scope. And that is exactly what the court did here by stating that anchors simply cannot be nailed within their common dictionary definitions, instead of looking first and foremost at the scope language and at what may be considered subject merchandise. Again, this court has held in the Meridian case that scope terms should not be rendered near surplusage, and the court's reliance on dictionary definitions not only reads out nails of two or more pieces, which again, the court conspicuously did not consider, but also read out other potential types of nails that don't fit within this narrow dictionary definition and do not, but are clearly covered by the language of the orders. And for that matter, it even reads out the HTS subheading 7907, which is part of the language of the scope as well. I believe I heard my signal, so if this court has no further questions, thank you for your time. Anything further? Thank you. We thank all sides, and the three cases are submitted. Thank you.